UUSD never once asked for such information. The ALJ failed to note in her Decision that the parent complied with each and every requirement of the CDE and established a "private school" pursuant to California Education Code.

14. The ALJ criticized the parent for failing to agree to an IEP date. That criticism was unfounded. The Parent worked diligently to reach agreement with UUSD on workable IEP dates, providing multiple potential IEP dates to UUSD several occasions. Finally, the parties agreed to an IEP date of December 14, 2017. Unfortunately, UUSD cancelled that IEP.

15. The ALJ accused the parent of making a false allegation that the parent had never noticed an IEP team meeting to review the vision therapy assessment. In fact, the parent had alleged that UUSD never held an IEP to review that vision therapy assessment, a fact the ALJ misunderstood and mis-stated.

16. Under California law, anyone may establish a private school representative by complying with State procedures, including the completion of a Private School Affidavit. Sarah's parent complied with California requirements for a Private School, as CDE's own staffer testified to at hearing. The CDE private school representative indicated that Resurrection Academy ("RA") met the requirements of the CDE which was mainly to complete a Private School Affidavit. There was no evidence whatsoever that somehow RA was improperly

operated.  Student made progress at RA as evidenced by Lindamood-Bell testing, the testimony of Sydney Pacheco and Rita Loof.  School psychologist Christy Bock also acknowledged Student had progressed in some areas while attending RA.

17. Even had Sarah attended school in an actual homeschool program – which she did not [she did intermittently in 2017 and thereafter] – that would not have been relevant to the issues raised at hearing.  The fact that the parent was part of the staff of the private school was also irrelevant to the issues at hearing.  The ALJ failed to note that the parent had provided reports from the private providers and evaluators to UUSD.

18.  Whoever the staff of RA was, RA was a private school legally established under California law; the parent administered RA pursuant to CDE rules.  At hearing the CDE representative explained the Private School Affidavit requirements and RA's compliance with those requirements.  The ALJ's Decision is surprisingly lacking of any reference to his testimony, and there was no evidence that RA was not operated pursuant to California private school rules.

19. The ALJ completely ignored the law regarding private educational services reimbursements in her Decision.  The question for hearing is not whether a private school is run by a parent or even if it is a registered school (which RA was).  The issue is whether the district has denied FAPE for the student and whether

11

the private school has allowed the student to make educational progress. Long-standing authority supports the right of a parent to decline an IEP offer and to provide private educational services – even non-State certified services – to her child. If the district has denied FAPE, and the private services are found to have provided benefit, i.e., to be appropriate, those services may be reimbursed, no matter who provides them or whether the school has a State license.

20. In the underlying matter, UUSD failed to assess Sarah in all areas of suspected disability as of October 31, 2016, ignored the parent's request for additional assessments in clearly identified areas of suspected need, and even unilaterally withdrew a portion of its FAPE offer to Sarah – without benefit of any IEP team decision.

21. At hearing, UUSD produced an IEP for October 31, 2016 that was not the IEP given to the parent at the IEP. The parent's version was Exhibit S-50 and was numbered and contained a page regarding the percentage of time Sarah was to spend in general education. UUSD provided other versions of that IEP, none of which had numbered pages – like the IEP given to the parent – and none of which included the required page regarding the percent of the school day Sarah would be in general education. That time, identified in the IEP, was 77% of her school day. The parent and advocate expressed concerns at the October IEP meeting about the 77% time in general education and

12

other IEP statements that indicated Sarah would be in general education far less that 77% of her school day.

22. UUSD's October 31, 2016 IEP relied on present levels of performance that were over a year old. While UUSD claimed that the parent somehow prevented UUSD from obtaining present-level data, the fact is that following the 2014 triennial assessment, the parent was never given any assessment plan by UUSD until September 30, 2016. The ALJ's criticism of the parent's lack of consent to the 2014 triennial assessment 1) was never an issue for the underlying matter, 2) could not be addressed by Plaintiff as it was not an issue, and 3) was entirely incorrect given the parent's complete consent to the 2014 triennial assessment... in writing.

23. The October 2016 IEP relied on present levels of academic and related needs for Sarah that were over a year old. (EX S-50. CL 348)  Although UUSD may argue that the parent prevented UUSD from obtaining data to determine present levels, UUSD first sent a new assessment plan to the parents on or about September 30, 2016. A release was sent to the parent for that assessment, but the release sent to the parent contained written notice that the information was "subject to redisclosure and is no longer protected by federal laws and regulations regarding the privacy of protected health information." The parent objected to unconsented to "redisclosure" of Sarah's private information.

24. Even at hearing, UUSD never explained why it

13

believed it could, at will, dispense Sarah's confidential information without the protections afforded her under federal laws.

25. The October 2016 IEP was not based on a full assessment of all areas of suspected disability for Sarah. Although she had been diagnosed with scoliosis, that area was not assessed as part of Sarah's triennial evaluation. In an independent educational evaluation report presented in 2015, prior to the October 2016 IEP, Dr. Markel had reported that Sarah had anxiety. UUSD never assessed Sarah in that area. The "present levels" of Sarah's 2016 annual IEP did not provide baselines so that Sarah's progress in annual goals... from the date the goals were created to the next annual review of those goals.... could be objectively measured. While it is correct that the goals themselves contained objective numbers, often percentiles or number of trials Sarah was to attain.

26. In fact, through no fault of the parent or student, the October 31, 2016 IEP had been delayed by UUSD so long that, according to UUSD's own administrator, Rochelle Yatomi, UUSD lacked present level information. The offer made by UUSD at that October IEP meeting was not based on present level information about Sarah's ability, skills, and unique educational needs. At hearing, UUSD witnesses testified that although UUSD created goals at the October 2016 IEP meeting, it couldn't really create baselines without recent

14

information. At hearing, Ms. Yatomi admitted that many of the October 2016 IEP goals lacked present-level information; she identified those deficient goals at hearing.

27. As for Sarah's private school services, UUSD's own school psychologist testified at hearing that Sarah had made progress in the private school program. Again, the fact that RA was a private school provided in the home was completely irrelevant to whether UUSD failed to offer FAPE and whether RA offered an appropriate program under IDEA.

**COMPLAINT**

28. Sarah Loof has been eligible for special education as a student with a disability since 2000. UUSD first identified her as having an intellectual disability but, following an independent evaluation that correctly identified her much higher ability, agreed that she was not a student who was intellectually disabled.

29. Over the years that Sarah was a resident of UUSD and entitled to services under IDEA, her mother sought a free appropriate public education from UUSD. In 2007, when the parent and UUSD entered into a settlement agreement, the agreement included a term that the parent, by signing the written agreement, was providing consent to UUSD's proposed assessments. Although UUSD insisted that the parent sign the written the pre-settlement assessment plan, an administrative law judge ("ALJ") from the California Office of Administrative Hearings ("OAH")

15

held that the written settlement agreement provided the necessary consent to UUSD's assessment plan. UUSD and the parent were the parties to that matter, and the OAH finding that the parent did not have to sign the assessment plan itself, but had to provide a written consent to assessment, had been made clear to both parties.

30. In 2014, the parties again entered into an agreement to resolve allegations of UUSD's denial of FAPE for Sarah. That agreement provided for Lindamood-Bell services for Sarah, paid for by UUSD.

31. Sarah's mother continued to seek assessments, IEPs, and FAPE from UUSD. In 2017 and after, she filed due process complaints with OAH for the 2015-16 and 2016-17 school years. The parties entered into a written agreement, but UUSD failed to honor the agreement, first insisting that a declarant take the additional step of having her declaration notarized, and then rejecting the signed and notarized declaration and declaring the entire agreement null and void.

32. When UUSD presented a second version of the agreement, pre-approved by the UUSD Board, the parents and Sarah first rejected it then, upon UUSD's re-offer of that agreement, signed it and returned it to the counsel. However, UUSD's counsel rejected that signed agreement.

33. When a complaint for retaliation and breach of contract was filed with this Court, the Court, upon motion for summary judgment by UUSD, granted that motion.

34. Plaintiff returned to OAH to exhaust her

16

administrative remedies, as the Court had indicated was required. In between the 2018 agreements and the Court's Order for Summary Judgment, the parties had both filed subsequent due process complaints and had signed a tolling agreement, agreeing that Plaintiff's issues for the 2016-17 and 2017-18 school years would be withdrawn and could be re-filed following the District Court's order.

35. Plaintiff had filed the underlying due process hearing in August 2019, OAH Case No. 2019080542. Hearing in that matter was continued for a number of reasons, including consolidation of the matter with UUSD's January 2020 case (raising issues beyond the two year statute of limitations), consolidation of the cases with Plaintiff's new due process (raising issues in response to UUSD's January 2020 complaint) and because of conflicts with another OAH case.

36. At hearing, there were no issues regarding events in 2014. There was testimony offered by UUSD witnesses that the parent had stopped testing by a Speech and Language pathologist during the triennial assessment. The ALJ criticized the parent for involving herself in a 2014 assessment. What the ALJ failed to report was the parent's testimony... uncontradicted by any evidence...that the assessor had been conducting the test improperly, showing Sarah a picture the wrong word card that did not match the test prompt. At hearing, Mrs. Loof testified that she was concerned that

17

continuing the test with such errors would yield inaccurate results. Even the assessment report never indicated that the testing was invalid, and UUSD relied on that assessment for its October 2016 FAPE offer.

37. The ALJ felt compelled to state, without any supporting evidence, that in 2014, "the mother's presence in the testing room... directly and adversely affected the Woodcock Johnson Tests of Achievement, Third Edition." Because that assessment was not at issue, Plaintiff was not prepared to address that at hearing. The ALJ's comment was not supported by the evidence at hearing.

38. In fact, ALJ repeatedly referenced the UUSD triennial assessments for 2014, which were not at issue in the underlying OAH matter. Without notice that the issues were being raised, either by the UUSD filing or by an affirmative defense, Plaintiff was unable to address the first-time allegations by the ALJ about the 2014 assessments. Nothing in the record at hearing supported the ALJ's statements against the mother nor were those findings relevant to the issues raised for school years at issue.

### FIRST CAUSE OF ACTION

For Partial Reversal of OAH's Decision Against Plaintiff Sarah Loof.

39. Plaintiff incorporates by reference each and every allegation of Paragraphs 1 through 38 of the Complaint as though fully set forth herein.

40. Under the IDEA, a student with a disability who

18

raises issues in an IDEA hearing has a right to a full and fair hearing of the issues. Upon conclusion of the hearing, the hearing officer must render a decision that is based on the facts established at hearing and on the law. Plaintiff alleges that the OAH Decision issued by the ALJ misconstrued or overlooked facts and failed to apply the law. Accordingly, the ALJ's Decision should be reversed on issues 3, 5, 6, 8, 9, 10, 11, 12, and 15.

41. Any issues raised by Plaintiff that were "tolled" under the parties' tolling agreement dated May 3, 2019 should have been heard and determined by OAH. Issues not tolled – including the issues newly raised by UUSD – should have been found in Plaintiff's favor, as they simply were beyond the statute of limitations in the Education Code and under Ninth Circuit case law.

42. In a 125-page Decision, the ALJ's disdain for the parent was palpable. The ALJ criticized the parent for withholding information about Resurrection Academy when, in fact, the parent provided all information that was requested about that school. The ALJ described the parent's actions as "clandestine" and stated that "Mother continued to conceal the fact that Resurrection Academy was a homeschool operated by Mother…" As stated herein, whether or not RA was operated at home was irrelevant to the issues raised at hearing.

43. In fact, the parent shared all information that UUSD sought about RA. Even though the Private school/RA

19

was home-based, it was a California Private School, established pursuant to California law, as established by the Department of Education. The parent's provision of the State-approved private program in the home was in compliance with California law regarding private schools, whatever the ALJ seemed to believe about RA. The California Department of Education does not limit the operation of private schools to commercial spaces but only requires that instruction be provided in spaces that comply with existing building codes.

44. In fact, the parent worked diligently with UUSD to identify IEP dates, offering at least nine dates for a total of 20.5 hours from October to December of 2017. The parent also offered additional dates in 2018 and 2019. The parent was never asked about RA's staff or principal, although the ALJ found fault with her for failing to name the RA principal... which was the parent herself. Nothing in State or Federal law required the parent to list names of the private school, RA, and she hid no information and did not fail to provide requested information about the school.

45. The greatest error by the ALJ was her finding that Sarah's mother refused to consent to assessments for Sarah's next triennial IEP after the 2014 triennial IEP. In fact, because UUSD had failed to conduct all necessary triennial assessments until August 12, 2015, the conclusion of the triennial IEP was very delayed. . . for many months. When the parent filed a compliance

20